## No. 5609.

### Scott Owens v. The State.

1. Practice — Indictment — A Plea in Abatement, technically considered, is unknown to our criminal system. Independent of the two grounds enumerated in article 523 of the Code of Criminal Procedure, jeopardy and want of jurisdiction are the only grounds upon which an indictment, after its presentment, can be set aside.

2. Same—Grand Jury.—The exemption from jury service of justices of the peace and deputy sheriffs, they being civil officers, is a personal privilege to be claimed or waived by them only. Such officials are not disqualified by the articles of the code defining the qualifications of grand jurors, nor by that enumerating the grounds upon which the array of the grand jury may be challenged.

3. Same — Indictment.—An unnecessary written caption constitutes no part of an indictment, nor do mottoes or business cards, though unnecessary and unseemly, impair its validity. See this case in illustration.

4. Malicious Mischief—Intent—Fact Case.—See the statement of the case for evidence held insufficient to support a conviction for malicious mischief, because insufficient to establish the intent alleged.

Appeal from the County Court of Erath. Tried below before the Hon. W. W. Moores, County Judge.

This conviction was had upon the first count of an indictment which charged the appellant with wilfully wounding a horse with intent to injure the owner. The penalty imposed was a fine of ten dollars.

J. C. Snider testified, for the State, that on the evening of December 25, 1887, the defendant came into his (witness's) yard leading a mare that belonged to Thurman Walker—the witness's said house and yard being on the place of the defendant's father. Defendant got a stick about an inch and a half in diameter, which he placed in the mare's mouth as if it was a bridle bit. He then tied a string to each end of the stick, and then tied the strings over the mare's head as if they formed a bridle headstall. Witness requested the defendant not to treat the animal in that manner, but defendant replied that his father told him to keep the animal out of the field, and that he was going to do it if he had to kill her. After tying the stick in the mare's mouth, the defendant turned her out of the field. The mare was a gentle

animal, and had a mule colt. The mule could cross almost any fence, and often got into Owens's field, and the mare always followed it. The animals would then go all over the field. Owens's field fence, as a whole, was not a good one. It was good in parts, but bad at other parts.

John Cain, the next witness for the State, testified that on the evening of December 25, 1887, he met the defendant about eighty yards from his father's house, going from the house towards his father's field. He had in his hands a stick notched at each end. Witness asked him what he was going to do with that stick. He replied that he was going to "fix the mare to keep her out of the field." Witness told him in reply that he would get into trouble, and advised him not to do it. The witness's father's field was about half a mile from the house. Witness did not know what the defendant did with the stick. The mare and her two year old mule colt got into Owens's field many times prior to December 25, 1887. Witness had often seen other stock in that field. The mule was a notoriously breachy animal, and would surmount any fence that it encountered, and the mare always followed it. Defendant's father's field fence was not a good one. Witness had never known the Owenses to take up the mare and keep her in their yard, but it was quite possible for them to do so without the knowledge of the witness. The mare generally got into Owens's field by following the mule, which would knock the fence down.

Thurman Walker testified, for the State, that he was the owner of the alleged injured animal. That animal came home one day, about the time alleged in the indictment, with a stick gag in her mouth, of which the witness relieved her. Her tongue was black and swollen, and she breathed with great difficulty. Witness did not know who gagged the mare. The mare was not breachy, so far as the witness knew, but her two year old mule colt was. Mr. Owens never notified witness that the mare was troubling him, or that he had taken and kept her up to protect his field from her ravages. He did, however, notify witness about a horse troubling him. Witness had endeavored to keep his stock from troubling his neighbors. The mare and mule ran on the range and came to the house at will. Witness used the mare sometimes, but not regularly.

The State closed.

J. P. Lattimore testified, for the defense, that he knew the Walker mare and mule colt at the time of and before the alleged

offense. The mare, separated from the mule, could not be called breachy, but she and the mule, when together, were notoriously breachy. Witness often saw the mare and mule together in Mr. Owens's field.

Robert Snider testified, for the defense, that he knew the Walker mare and mule at and before the time of the alleged offense. They were notoriously breachy animals. Witness often saw them together in the Owens field before the date of the alleged offense. He turned the mare out of Owens's field one or two days after the alleged offense. If anything was the matter with the mare's mouth at that time the witness did not know it. He did not observe her closely, but, as he was very close to her, he thought that, had her mouth been injured at all at that time, he would have observed it. She certainly had no stick in her mouth at that time, and she ate grass without difficulty. Witness had seen other stock than the Walker mare and mule in Owens's field.

William Owens testified, for the defense, that he was the father of the defendant, who lived at witness's house, and was under witness's control, being yet a minor. Defendant brought the mare to witness's house on December 25, 1887, and witness told him to turn her out. Witness afterwards learned that before doing so, the defendant tied a stick in the animal's mouth. The mare was a very breachy animal, and for years—long before the birth of her mule colt—had been breaking into witness's field, and depredating on his crops. Witness did not think he would exaggerate a particle in saying that he had taken that mare out of his field a hundred times. He often sent Mr. Walker word to come and get the animal and keep her out of his field. He several times put the mare up and sent Walker word that he could not get her until he paid witness for the damage she had done his crops. Walker not only never did anything to control his stock, but either he, or some member of his family, would get that mare out of witness's lot, without witness's knowledge or consent, and release her on the range, when she would invariably go back into the field. In consequence of the drought of 1886, witness saved no other feed than a quantity of "moonshine"—unmatured corn stalks, stacked. The mare and mule destroyed all of the witness's "moonshine" stock feed. Mr. Walker not only paid no attention to witness's oft repeated request to do something to keep his stock from depredating on witness's field, but one of Walker's sons told one

of witness's children that his father "didn't care a d—n" how much the animals damaged witness. The mare and mule were in witness's field on the morning after the alleged offense eating as vigorously as ever. If her mouth was then sore, it could not be observed.

*S. E. Buck*, for appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. This appeal is from a conviction for malicious mischief. The indictment contained two counts— one for wilfully wounding the animal with intent to injure the owner, and one for wilfully and wantonly and unmercifully disfiguring and cruelly abusing the animal.

A plea in abatement of the indictment was made by defendant upon the ground that three of the grand jurors who found and presented the bill were disqualified and incompetent to act as grand jurors—one being a duly elected, qualified and acting justice of the peace, and the two others being duly appointed, qualified and acting deputy sheriffs of the county. A plea in abatement to an indictment is not, technically speaking, provided for in our Code of Criminal Procedure. There are two grounds, and two only, mentioned in our Code as sufficient on motion to set aside an indictment. (Code Crim. Proc., art. 523.) Independently of these two grounds, jeopardy and want of jurisdiction are the only other grounds known by which to avoid and vacate an indictment after its presentment. (Dodd v. The State, 10 Texas Ct. App., 370; Williams v. The State, 20 Texas Ct. App., 357: Johnson v. The State, 22 Texas Ct. App., 206.)

But, even if the plea was entitled to be considered in this case, we know of no statute of this State expressly prohibiting justices of the peace and deputy sheriffs from acting as grand and petit jurors. It is true that as civil officers of the State they are declared exempt from jury service, but it is only where they claim the exemption. (Rev. Stats., art. 3014.) Their official status does not disqualify them under the provisions of the Code of Procedure defining the qualifications of grand jurors (Code Crim. Proc., arts. 358, 373), and a challenge to the array of the grand jury does not embrace such grounds. (Code Crim. Proc., art. 380.) It was not error to overrule defendant's plea in abatement.

Again, it is objected to the indictment that it does not commence, "In the name and by the authority of the State of Texas," but, on the contrary, that there is written or printed above the beginning the legend: "The Indictment: Empire Print; Encourage home industry and your money will be circulated among the people." After this motto the indictment commences properly, and is formal in all subsequent parts. An unnecessary written caption constitutes no part of an indictment, nor do mottoes or business cards, though unnecessarily and unseemly, impair its validity if otherwise valid. (Winn v. The State, 5 Texas Ct. App., 621; West v. The State, 6 Texas Ct. App., 485.) The objection was properly overruled.

As heretofore stated, there were two counts in the indictment, and the motion of defendant to quash was sustained as to the second count, and the same was quashed, and defendant was tried alone upon the first count, which charged that the act was done with intent to injure the owner of the animal. (Penal Code, art. 679; Willson's Texas Crim. Stats., pp. 234, 235.) We are of opinion the evidence fails to establish the intent charged; on the contrary, if any intent to injure was proven, it was one to injure the animal because of its breachy character and habits.

Without discussing other errors complained of, we will only notice the further one that the venue of the offense is not proven. The record fails to show that the offense was committed, as alleged, in Erath county.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*